**OZARK WOOD INDUSTRIES, INC., Plaintiff,**

**and**

**Bob Griffin, Plaintiff-Appellant,**

**v.**

**FIRST NATIONAL BANK OF DONIPHAN, Defendant-Respondent.**

**No. 12000.**

Missouri Court of Appeals,
Southern District,
Division Three.

Nov. 20, 1981.

John A. Clark, Friedewald, Chadwick & Clark, Poplar Bluff, for plaintiff-appellant.

L. Joe Scott and Daniel T. Moore, Poplar Bluff, for defendant-respondent.

TITUS, Judge.

Ozark Wood Industries, Inc. (hereinafter "Ozark Wood"), as sole plaintiff filed its original and first amended petitions for actual damages only against the defendant bank. A second amended petition, upon which the cause was court-tried, named Bob Griffin as an additional plaintiff. This petition asked both actual and punitive damages of defendant. Because the trial evidence revealed Griffin was the sole owner of the personal property wrongfully acquired by defendant, Ozark Wood dismissed its claim before the matter was submitted for judgment. The trial court awarded

plaintiff Bob Griffin (hereinafter "plaintiff") actual damages of $2,102.50 and declared the facts were insufficient to "show the malicious or wanton conduct necessary to support an award for punitive damages." Only plaintiff has appealed.

All three petitions alleged the equipment wrongfully removed by defendant from a building rented to Ozark Wood consisted of the following:

"150 Mattison Lathe Knife Holders
1 Mattison Set-up Cylinder
1 Mattison Knife Lathe Bar
1 Mattison Lathe Scales
3 Rolls Commercial Sandpaper for Drum Sander
1 Lot of small tooling for Mattison Wood Lathe."

In a letter written by plaintiff to defendant a month after the misappropriation (defendant's Exhibit C), plaintiff demanded return of the equipment or compensation "for its loss in the amount of $2102.50." Attached to and made a part of the letter, was a list of the missing items and their values according to plaintiff's calculations. The list and values were as follows:

| "150 Mattison Lathe Knife Holders (4.85 each) | $ 727.50 |
| 1 Mattison Set-Up Cylinder | 175.00 |
| 1 Mattison Knife Lathe Bar | 400.00 |
| 1 Mattison Lathe Scales | 300.00 |
| 3 Rolls Commercial sand paper for drum sander | 300.00 |
| 1 Lot of small tooling (in box) for Mattison Wood Lathe | 200.00 |
| Total – | $2,102.50" |

The wary reader will observe the wrongfully taken items listed in the three petitions and in plaintiff's demand letter are identical. Also, the total value given the items in plaintiff's letter is the exact same amount the court awarded him for actual damages. Therefore, the question: If plaintiff received a judgment for actual damages in the same amount claimed in his demand letter, supra, how has he been prejudiced by that portion of the judgment?

■ The substance of plaintiff's first point relied on is that the trial court erred in adopting the $2,102.50 figure demanded by plaintiff in his letter to defendant (see Exhibit C, supra) in arriving at the amount of actual damages to be awarded. In connection with the exhibit we note plaintiff made no objection to its admission into evidence. He did not and still does not object that settlement offers are not evidence of the value of the involved property [*State ex rel. State Highway Commission v. Volk*, 611 S.W.2d 255, 259[5] (Mo.App.1980)] or because plaintiff testified he lacked knowledge of the value of the property taken. *Casada v. Hamby Excavating Co., Inc.*, 575 S.W.2d 851, 855[4] (Mo.App.1978). Therefore, minus any objections whatsoever, plaintiff's lack of professional expertise as regards the value of the property as expressed in the demand letter, went only to the weight and not to the competency of the values set forth in the writing. *Keeton v. Sloan's Moving and Storage Company*, 282 S.W.2d 194, 199[11] (Mo.App.1955).

■ Albeit plaintiff disavowed any expertise in arriving at the value of the property as expressed in the letter, nonetheless, and in a display of incongruity, he testified at trial the value of the personalty taken was "in the neighborhood of Seventeen Thousand Dollars." Plaintiff purportedly prepared a list of missing items and from this his expert witness opined the value of such property was $17,032.10. However, an examination of the expert's figure, inter alia, reveals it included a $6,000 cost for an entire machine to get the one knife lathe bar which plaintiff in his letter had valued at $400, and that the list included several items or parts which were not alleged to have been taken in any of the three petitions filed in the cause. It is axiomatic that in face of defendant's repeated objections and without plaintiff amending his pleading in any respect, plaintiff's evidence must conform to the pleadings as the pleader may not be permitted to prove that which he has not alleged. *Swan v. Stuart*, 353 S.W.2d 805, 806[2, 3] (Mo.App.1962).

■ "Our review is governed by Rule 73.01, V.A.M.R., as set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and we are not to disturb the lower court's judgment unless it is against the weight of the evidence, is not supported by substantial evidence, or erroneously declares or ap-

plies the law. Before we conclude a judgment in a court-tried case is against the weight of the evidence we must entertain a *firm belief* the judgment is wrong. And, we are to give due regard to the opportunity to the trier of fact to have adjudged the credibility of the witnesses. The trial court's resolution of conflicting evidence is to be accorded due deference by the reviewing court. *Trenton Trust Co. v. Western Sur. Co.,* 599 S.W.2d 481 (Mo. banc 1980).... The court was at liberty to believe all, part or none of the testimony of any witness. *Long v. Lincoln,* 528 S.W.2d 512 (Mo.App.1975)." *Commerce Bank of Poplar Bluff v. Bulger,* 614 S.W.2d 768, 769[1–3], 770[5] (Mo.App.1981). Predicated on these considerations and the aforementioned recited facts, we rule the judgment nisi as it relates to plaintiff's claim for actual damages is affirmed.

Next we consider plaintiff's claim for punitive damages which the trial court denied. In April 1974 Robert Murray, then in the woodworking business for himself, borrowed money from the defendant bank. He executed a note therefor and a security agreement covering certain woodworking equipment he owned. The note was in default when Murray filed for bankruptcy in March 1976. Apparently all of Murray's assets, including some woodworking equipment which he had pledged to defendant, were not delivered to the trustee in bankruptcy. Shortly after declaring bankruptcy, Murray went to work for plaintiff and Ozark Wood. In the course of such employment, Murray purchased for plaintiff certain woodworking equipment, including that described in the three petitions filed herein and the plaintiff's demand letter, supra. The equipment was stored in a building rented to Ozark Wood. In November 1976 the defendant's president was mistakenly advised that some of the woodworking equipment Murray had pledged to defendant was stored in the building which Ozark Wood had leased. Defendant's president, Duke Campbell and Roy Pigg, the latter a former employee of Murray and described as being "there by order of the Bankrupt Court Referee," went to the building where the equipment in question was stored. This trio, together with the owner of the building, looked at the equipment through a window. Pigg subsequently testified the equipment therein "looked like the Murray equipment." Later, without the building owner, the trio returned to the premises and removed the woodworking equipment in question. The equipment thus removed was stored in another building from which it was stolen without fault of the defendant.

 Actual malice, in this state, is defined as motivation by ill will and spite. It is not a prerequisite to punitive or exemplary damages. Legal malice, when supported by the evidence, will do. The determining factor as to whether legal malice exists vel non as the basis for the award of exemplary damages is whether defendant, intentionally and without just cause or excuse, did a wrongful act. This means defendant not only intended to do the act complained of which is ascertained to be wrongful, but that he knew it to be wrongful when he did it. To justify punitive damages, there must be some element of bad motive or wantonness. If one intentionally does a wrongful act and then knows at the time it is wrong, he does it wantonly and with a bad motive. *Pollock v. Brown,* 569 S.W.2d 724, 733[9–10] (Mo. banc 1978). On the other hand, if defendant acts in good faith on the honest belief his act is lawful, defendant is not liable for punitive damages albeit he may be mistaken as to the legality of his act. *Booth v. Quality Dairy Company,* 393 S.W.2d 845, 851 (Mo.App.1965) and cases there cited. Demonstration of a simple good faith ignorance or mistake as to the wrongfulness of the act charged, constitutes a defense to the award of punitive damages. *Young v. Mercantile Trust Co. Nat. Ass'n,* 552 S.W.2d 247, 250[12] (Mo.App.1977).

 Based upon the considerations we must accommodate in review of this court-tried case (all as enumerated in the seventh paragraph of this opinion, supra) and the facts peculiar to this cause, we rule the trial

court could have reasonably found, as it obviously did, that defendant's charged mistake occurred as the result of a good faith error or through ignorance sans any wantonness or bad motivation at the time the taking was effected. Accordingly, the judgment nisi as it relates to plaintiff's claim for punitive damages was not erroneous.

Judgment affirmed.[1]

PREWITT, P. J., and HOGAN, J., concur.

---

1. Respondent's motion to dismiss appellant's appeal for failure to comply with Rule 84.04(d), V.A.M.R., taken with the case, is well conceived. However, as we did not afford appellant a second chance to comply with the Rules per Rule 84.08, V.A.M.R., respondent's motion heretofore taken with the case is denied. *Green v. Hastings*, 621 S.W.2d 549, 550 (Mo. App.1981).