Celeste WIESELMAN and the Estate of
Joseph C. Meyer, Deceased,
Appellants,

v.

William G. SCHMEGEL, Jr., and Tower
Grove Bank and Trust Company,
Respondents.

No. 47055.

Missouri Court of Appeals,
Eastern District,
Division One.

Aug. 28, 1984.

Richard M. Torack, Clayton, for appellants.

David S. Slavkin, St. Louis, for respondents.

JOHN E. PARRISH, Special Judge.

These appellants are plaintiffs in three of the four counts which were heard and determined by the trial court.[1] The first two counts are separate actions against each respondent which seek actual and punitive damages for fraudulent misrepresentation. The remaining count seeks a permanent injunction against respondent Tower Grove Bank and Trust Company (now known as County Bank of Tower Grove and hereafter referred to as TGB) to prohibit it from foreclosing upon certain notes and bonds owned by appellants which were pledged as collateral for promissory notes held by TGB.

In accordance with findings of fact and conclusions of law of the trial court, judgment was entered for respondents on all counts. We affirm.

Celeste Wieselman, one of appellants, and Eugene Grosberg each owned fifty percent of the shares of stock of We-Gro, Inc. (hereafter referred to as We-Gro). We-Gro owned a dinner theatre known as Portico Restaurant and Dinner Theatre (hereafter referred to as Portico). Celeste was president and treasurer of We-Gro. Eugene was vice president and secretary.

Portico commenced operation in February, 1979. We-Gro had obtained a loan from TGB for operating capital. That loan was secured by a pledge of certain bonds and notes owned by Joseph Meyer and Janyce Olin Meyer, Celeste's parents. We-Gro had also assumed other indebtedness applicable to fixtures installed at Portico. The other indebtedness was secured by a lien on those fixtures.

After Portico opened, TGB made additional loans for operating capital. Additional bonds and notes were pledged as collateral to secure the new loans.

Celeste and Eugene then determined that Portico required additional funds for advertising and capital improvements if it was to operate profitably. They inquired about the possibility of We-Gro obtaining a Small Business Administration (SBA) loan. They approached respondent Schmegel, the loan officer at TGB who handled We-Gro's loan account.

We-Gro (through Celeste and Eugene) requested TGB to provide a letter of refusal which would state that TGB would not make further loans to We-Gro. In order for a borrower to qualify for a direct loan from SBA, its bank and one other must decline to extend credit.

TGB declined to issue a letter of refusal. Schmegel advised Celeste and Eugene that TGB would extend further credit to We-Gro if additional security was provided and that, if an SBA guarantee could be obtained, TGB would extend an SBA participating loan.

1. The other plaintiffs settled their claim after notice of appeal had been filed and are no longer parties to this appeal.

As the result of the discussion with Schmegel, Celeste and Eugene caused an SBA participating loan application to be prepared and delivered to Schmegel. The application requested a loan of $150,000. Loan proceeds were to be used to provide $41,000 for an advertising campaign and certain capital improvements and to provide $109,000 to retire existing loans.

Schmegel discussed the SBA application with personnel of that agency and thereafter related to Celeste and Eugene that SBA was not interested in making a loan to We-Gro.

Thereafter, We-Gro obtained additional financing from TGB. This was accomplished by Eugene and his wife executing a deed of trust on their residence and collateral pledge agreements permitting We-Gro to pledge the residence to TGB as security for loans. This procedure produced $37,-000 additional capital for We-Gro in July, 1979, and $20,000 in March, 1980.

The efforts to make Portico a successful business venture failed. Sometime after November, 1980, Portico ceased operations.

Appellants contend that Schmegel told Celeste and Eugene that if We-Gro would bring him an SBA participating loan application, he (Schmegel) would file it with SBA. Appellants assert this alleged misrepresentation by Schmegel constitutes actionable fraud and contend the trial court erred in its finding of fact that Schmegel did not misrepresent facts and circumstances relating to the SBA loan application. Appellants further contend that the trial court committed error with respect to its entry of four of its conclusions of law. They contend the court erred in concluding that appellants failed to sustain their burden of proving by the preponderance of credible evidence any misrepresentation or falsity in statements made by Schmegel regarding the status of the SBA application or that it had been filed with or denied by SBA. Additionally, appellants assert the following as errors by the trial court: entry of its conclusion of law that the SBA loan application would have been denied if submitted; entry of its conclusion of law

that no proximate loss or damage occurred by reason of the alleged misrepresentation and failure of We-Gro to obtain an SBA loan; and, entry of its conclusion of law that We-Gro could not have obtained financial assistance from SBA pursuant to applicable provisions of The Code of Federal Regulations.

■■■ We must defer to the trial court's determinations unless they are against the weight of evidence or the product of an erroneous declaration or application of law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Before a judgment in a court-tried case is deemed to be against the weight of the evidence we must establish a *"firm belief"* the judgment is wrong." *Ozark Wood Industries, Inc. v. First National Bank of Doniphan*, 625 S.W.2d 651, 654 (Mo.App.1981). The trial court is to be afforded due regard for its opportunity to have judged the credibility of witnesses. Rule 73.01(c)(2). "The trial court's resolution of conflicting evidence is to be accorded due deference by the reviewing court. *Trenton Trust Co. v. Western Sur. Co.*, 599 S.W.2d 481 (Mo.banc 1980), .... The court was at liberty to believe all, part or none of the testimony of any witness. *Long v. Lincoln*, 528 S.W.2d 512 (Mo.App. 1975)." *Ozark Wood Industries, Inc. v. First National Bank of Doniphan*, supra, citing *Commerce Bank of Poplar Bluff v. Bulger*, 614 S.W.2d 768, 769[1.3], 770[5] (Mo.App.1981).

Paragraphs 8 and 9 of plaintiffs' amended petition set forth the alleged misrepresentations by Schmegel of which appellants complain. Those paragraphs state:

"8. Defendant SCHMEGEL never filed the SBA Loan Application on behalf of Plaintiffs, and WE–GRO, INC., with the United States Small Business Administration as he had represented he had done to EUGENE GROSBERG and CELESTE WIESELMAN.

"9. Defendant SCHMEGEL knew that his representation that the SBA loan had been filed but denied was false and in fact untrue."

The trial court entered its finding of fact "that defendant Schmegel did not misrepresent the facts and circumstances regarding the SBA loan application to the plaintiffs or their agents; ...."[2] The trial court further concluded: "[t]he plaintiffs have failed in their burden of proof to prove misrepresentation or falsity in the statements and advice of defendant Schmegel by the preponderance of the credible evidence, and [the trial court] concludes that Schmegel did not misrepresent the status of the SBA application nor state that it had been 'filed' or 'denied' by the SBA."[3]

It is this finding of fact and this conclusion of law to which appellants' first two allegations of error are directed.

To address the issue of whether the trial court erred in finding that Schmegel did not misrepresent "facts and circumstances" regarding We-Gro's SBA loan application and that appellants failed to meet their burden of proof, it is necessary to determine what was required of appellants.

■ Appellants made the allegation of fraud. Therefore, they had the burden of proving fraud in order to recover. *Emily v. Bayne*, 371 S.W.2d 663, 666 (Mo.App. 1963). Unless they proved each of the elements[4] of the action for fraud, they cannot recover. *O'Shaughnessy v. Ward Aircraft Sales & Service, Inc.*, 552 S.W.2d 730, 733 (Mo.App.1977); *Emily v. Bayne*, supra at 666.

The finding of fact about which appellants complain (trial court's finding of fact number 30) is directed to the first two elements of an action for fraud: that a representation was made which was false. The trial court found that appellants failed to prove by the preponderance of credible evidence that the asserted misrepresentation was made by Schmegel. Accordingly, the trial court entered its finding of fact that no misrepresentation was made.

It is uncontroverted that Schmegel received a completed SBA loan application for We-Gro. Schmegel testified that Celeste and Eugene discussed We-Gro's need for more operating capital with him. They expressed an interest in an SBA loan. After explaining the procedure for obtaining a loan from SBA, Schmegel told Celeste and Eugene that TGB would extend additional loans to We-Gro "if it was properly secured." Since TGB was willing to make further loans to We-Gro, a direct loan from SBA was not available.

Schmegel's testimony was that he advised Celeste and Eugene about a conversation he had with SBA personnel. He testified:

"A. I told them that I had a conversation with the SBA, and I told them that what we would do is once we got all the information together that I would talk with one of the loan specialists at SBA and see what they thought of the package."

Schmegel testified that he talked to a Mr. Lisk and a Mr. Quirk at SBA. Mr. Lisk was a loan specialist. Mr. Quirk was a management assistance officer.

After Schmegel received We-Gro's SBA loan application, his testimony was that he told whoever delivered the application to him (he thought it was probably Celeste and Eugene together) that he would take it to Mr. Quirk, let Mr. Quirk review it and "try to get a feel whether or not SBA was interested in the loan." Schmegel testified that he did not tell Celeste and Eugene that he would file the application.

Following Schmegel's showing the SBA loan application to Mr. Quirk and discussing SBA's involvement in restaurant loans, Schmegel formed the impression that SBA would not be interested in making the loan to We-Gro. He testified that he told Cel-

2. Findings of Fact number 30.

3. Conclusions of Law number 1.

4. The elements of a cause of action for fraudulent misrepresentation are: a representation; its falsity; its materiality; speaker's knowledge of falsity or his ignorance of truth; speaker's intent that his statement be acted upon; hearer's ignorance of falsity of statement; his reliance on truth of statement; hearer's right to rely on statement; and hearer's consequent and proximate injury.

este and Eugene of the impression he received and that he did not tell Celeste and Eugene that he had filed the application. Schmegel testified that he never told them the application had been filed and denied.

Later, Schmegel, on behalf of TGB, made additional loans to We-Gro secured by a second deed of trust on Eugene's residence.

Eugene testified that Schmegel told him and Celeste that the application was submitted and turned down. Celeste testified that Schmegel advised them that the application had been filed and denied.

The trial court's finding that Schmegel did not misrepresent the facts and circumstances regarding the SBA loan application is consistent with Schmegel's testimony. Giving due regard to the trial court's superior opportunity to evaluate the credibility of witnesses and its discretion to believe all, part or none of the testimony of any witness, we cannot conclude the trial court's finding is against the weight of evidence or is not supported by substantial evidence. From the record before us, we are unable to entertain the firm belief that the judgment is wrong. *Ozark Wood Industries, Inc. v. First National Bank of Doniphan*, supra. Neither can we conclude that the trial court's determination is the product of erroneous declaration or application of law. Ergo, appellants did not meet their burden of proving by the preponderance of credible evidence the falsity of statements made by Schmegel.

Having concluded that appellants failed to prove fraud in that they have not shown the element of representation and its falsity, and, acceding to the dictate that failure to prove any element of fraud defeats that cause of action, the resolution of appellants' remaining allegations of error is not necessary.

Accordingly, judgment is affirmed.

SNYDER, P.J., and STEWART, J., concur.