DECK AND DECKER PERSONNEL
CONSULTANTS, LTD.,
Plaintiff-Appellant,

v.

Tracy G. THOMAS,
Defendant-Respondent.

No. WD 32085.

Missouri Court of Appeals,
Western District.

Oct. 13, 1981.

James C. Butcher, Butcher, Cline & Mallory, Columbia, for plaintiff-appellant.

Timothy C. Harlan, Harlan Law Offices, Boonville, for defendant-respondent.

Before TURNAGE, P. J., and CLARK and LOWENSTEIN, JJ.

TURNAGE, Presiding Judge.

Deck and Decker Personnel Consultants filed suit against Tracy Thomas for the balance due on a promissory note representing a fee for obtaining employment for Thomas. Thomas filed a counterclaim seeking actual and punitive damages for the refusal of Deck and Decker to make a refund of a part of the fee. The jury found in favor of Thomas on Deck and Decker's claim, and found in favor of Thomas on his counterclaim and awarded him $30.81 actual damages[1] and $6,350 in punitive damages.

On this appeal Deck and Decker contend there was insufficient evidence to support a submission of punitive damages. That part of the judgment awarding Thomas actual damages and attorney fees is unchallenged. Reversed.

Thomas went to Deck and Decker, an employment agency covered by §§ 289.005 and 289.070, RSMo 1978[2], with the object of obtaining employment. Deck and Decker

---

1. Although the petition sought recovery of attorney fees, that issue was not submitted to the jury, but was fixed by stipulation of the parties and added to the judgment.

2. All statutory references are to RSMo 1978 unless otherwise noted.

located a job for Thomas at Adams Machine Shop and Tool Company in Columbia. The fee due Deck and Decker, based on a percentage of Thomas' gross annual earnings from the new job, was $1,040. Thomas executed a promissory note to Deck and Decker in that amount and made a downpayment of $75. No further payments were made on the note.

Thomas worked for Adams from February 6 to February 15, 1978, and thereafter failed to report for work. When Thomas failed to appear, Adams called Deck and Decker and wanted to know what had happened to Thomas. He was told Deck and Decker did not know but they would get in touch with Thomas and find out why he had failed to return to work. John Decker, the owner of Deck and Decker, testified that his office called Thomas and inquired why he had not continued to work for Adams. He testified that Thomas said that he just decided he didn't want to drive from Boonville to Columbia to work. During this conversation, Thomas made no complaint about working conditions.

Adams testified concerning his employment of Thomas and the length of time he worked. Adams stated that Thomas called him and said he would not be back to work because he was going to help his girlfriend's father. Adams stated Thomas made no complaint about his work or the conditions in the shop.

Thomas testified that he stopped working because he felt the conditions in the shop were dangerous because the only heat was supplied by a garden hose running to a pipe from which came an open flame. He stated the flame was close to his feet and further stated that this flame was unable to heat the shop to a level which would make it comfortable to work. Thomas said he called the office manager of Deck and Decker and told her about the problem of heat and his concern for his safety. She told him that they thought it was a very safe place to work and that they had no knowledge of the conditions he was describing. He also denied that he had told Adams that he wasn't coming back because he

had other things to do. Thomas stated that at the time of trial he was working at another job for 25¢ an hour more than he was earning at his job with Adams.

Thomas further stated it was not until after Deck and Decker had filed suit against him to collect the balance on his promissory note that he made any demand for a refund for the part of the $75 which he had already paid on the employment fee.

Decker testified in rebuttal that he understood that if Thomas had left his employment for good cause that Thomas would be entitled to a refund of a part of the money Thomas had already paid. However, Decker stated that his attorney obtained a statement from Adams and that after receiving the demand from Thomas for a refund of a part of the fee, the reason he refused to make the refund was because of the statement Adams had given. Although the Adams statement was not in evidence, the only inference to be drawn indicates that the statement was consistent with Adams' in-court testimony.

Section 289.040(10), Cum.Supp.1980, provides that an employment agency may not:

"[c]harge an applicant a fee exceeding twenty-five percent of the gross salary actually paid to the applicant, if the applicant's employment shall terminate within the first forty-five days of such employment, unless the applicant has left his work voluntarily without good cause or unless the employment was terminated by the employer because of misconduct by the applicant;"

If a refund demanded is not made, § 289.060.4 provides:

"An agency which willfully fails to make payment within forty-five days to an applicant after demand in writing as provided in this section may be sued by the applicant to recover an amount equal to all moneys due, plus ten percent interest, court costs and attorney's fees."

In addition to the recovery provided in § 289.060.4, § 289.060.5 declares that any act, method or practice in violation of §§ 289.005 to 289.070 shall constitute a vio-

lation of § 407.020. Section 407.025 provides that if any person has suffered an ascertainable loss as a result of a method, act or practice declared unlawful by § 407.-020, then "[t]he court may, in its discretion, award punitive damages . . . ."[3]

On this appeal Deck and Decker contends that Thomas failed to introduce substantial evidence which would support a submission of punitive damages. Section 407.025 does not define punitive damages nor provide any standard for the imposition of such damages. Punitive damages have been defined and the applicable standards announced by which such damages are to be awarded for many years and in many cases. When the legislature used the term punitive damages in § 407.025, it "is presumed to have acted with knowledge of that judicial or legislative action." *Hudson v. School Dist. of Kansas City,* 578 S.W.2d 301, 311[9] (Mo.App.1979). Thus, the well established quantum of proof required to award punitive damages is to be applied in this case.

 First it should be observed that the sufficiency of the evidence to warrant the imposition of punitive damages by the jury is for the court to decide. *Fordyce v. Montgomery,* 424 S.W.2d 746, 751[6–8] (Mo.App.1968). In determining the sufficiency of the evidence to support a submission of punitive damages, the evidence is to be viewed in the light most favorable to the plaintiff and all favorable inferences favorable to the submission are to be considered. *Smith v. Courter,* 575 S.W.2d 199, 207[6, 7] (Mo.App.1978).

In this case there is no contention of any actual malice on the part of Deck and Decker toward Thomas, so the foundation for the award of punitive damages must be the existence of legal malice. In *Beggs v. Universal C. I. T. Credit Corporation,* 409 S.W.2d 719, 722[2–4] (Mo.1966), the court stated the test for legal malice as follows:

"The test to be applied in determining whether malice existed as a basis for the award of punitive damages is whether the defendant did a wrongful act inten-

tionally and without just cause or excuse. 'This means that defendant not only intended to do the act which is ascertained to be wrongful but that he knew it was wrongful when he did it. There must be, in order to justify punitive damages, some element of wantonness or bad motive, but if one intentionally does a wrongful act and knows at the time that it is wrongful he does it wantonly and with a bad motive.' "

It is well settled that a submissible case must rest upon substantial evidence which was defined in *Neil v. Mayer,* 426 S.W.2d 711, 715[3–6] (Mo.App.1968) as:

"that evidence which, if true, has probative force upon the issues and from which the trier of fact can reasonably decide the case on the fact issues."

There is no dispute that Deck and Decker intentionally and willfully refused to make the refund. The element Thomas was required to prove was that Deck and Decker knew it was wrong to refuse to make the refund at the time of such refusal.

 The evidence most favorable to Thomas would indicate that Thomas had informed Deck and Decker that he left his job with Adams because of the working conditions but that Deck and Decker refused to make the refund after its attorney obtained a statement from Adams indicating that Thomas had left because he was going to help his girlfriend's father, with no complaint about his job or the conditions of his work. To support the submission of punitive damages, it is necessary to find substantial evidence that Deck and Decker knew that Thomas did not leave his job voluntarily without good cause.

It is uncontradicted that Deck and Decker refused to make a refund to Thomas based upon the information it had received from Adams that Thomas had left his job because he wanted to help his girlfriend's father. Viewed most favorably to Thomas, the evidence in sum shows Deck and Decker had information from Thomas that he left

___

**3.** The issue of whether or not punitive damages may be recoverable in this action under the sections mentioned is not raised and is not decided because of the result reached.

his job for good cause and information from Adams that Thomas left voluntarily without good cause. There is nothing in the evidence to indicate that Deck and Decker did not in good faith rely on Adams' statement when it refused to make the refund.

When confronted with these two contradictory statements as to why Thomas left his job, Deck and Decker had to decide whether or not to make a refund. To justify a submission of punitive damages, the evidence must show that Deck and Decker knew it was wrong not to make the refund. No Missouri case has been cited or located which deals with a party being sued for punitive damages under the facts here. However, a Texas court refused to sustain an award of punitive damages for conversion of an automobile when the facts as to the ownership were contradictory. The court applied the following test in *Pacific Finance Corporation v. Gilkerson*, 217 S.W.2d 440, 446[12, 13] (Tex.App.1948):

"[W]here there is sufficient ground for an honest difference of opinion upon a given state of facts, especially where it concerns a hazy legal right, the sincere pursuance of a mistaken right by one of the parties cannot thereafter be made the basis of a claim for vindictive damage."

The contradictory statements from Thomas and Adams gave sufficient ground for an honest difference of opinion on whether Thomas left with or without good cause. Thomas does not contend that Deck and Decker did not base its refusal on a sincere belief that Thomas left without good cause because of the Adams statement. Under the test in *Pacific Finance*, which this court adopts, the sincere pursuance of the course to refuse a refund cannot be held to constitute evidence that Deck and Decker knew that the failure to pay the refund was wrong.

It follows that there was not substantial evidence upon which to submit to the jury the issue of punitive damages. That part of the judgment awarding punitive damages is reversed.

All concur.